UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NECTALI ULISES ROMERO ROMERO,<br>Petitioner,<br>v.<br>CHAD F. WOLF, et al.,<br>Respondents. | Case No. 20-cv-08031-TSH<br><br>**ORDER RE: PETITION FOR A WRIT OF HABEAS CORPUS**<br>Re: Dkt. No. 1 |

## I. INTRODUCTION

Petitioner Nectali Ulises Romero-Romero has been in the custody of the Department of Homeland Security's Immigration and Customs Enforcement ("DHS") for more than a year. He was charged with removability based on a prior conviction that qualifies as an aggravated felony. *See* 8 U.S.C. § 1226(c)(1)(B). Petitioner claims that he is being improperly detained under the mandatory detention provisions of the Immigration and Nationality Act, in violation of his Fifth Amendment right to due process. He filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ordering his release or, alternatively, a hearing on whether his continued detention is justified. ECF No. 1. Respondents filed a Return, ECF No. 10, and Petitioner filed a Traverse, ECF No. 11. Neither side called for a hearing, and the Court determines the matter is appropriate for resolution without oral argument. Civil L.R. 7-1(b). Having considered the relevant pleadings and arguments of counsel, the Court **GRANTS** the Petition for the reasons explained below.

## II. BACKGROUND

The parties do not dispute the pertinent facts. Petitioner Nectali Romero-Romero is a Salvadoran national, long-time Lawful Permanent Resident ("LPR") of the United States who is currently detained by Immigration and Customs Enforcement ("ICE") at the Mesa Verde

Detention Facility ("Mesa Verde"). Decl. of Hayley Upshaw ISO Petition ("Upshaw Decl.") Exs. A (Notice to Appear, or "NTA"), D. On April 11, 2016, Petitioner was convicted in the California Superior Court, County of Los Angeles for lewd or lascivious acts with a minor under 14 years of age, in violation of California Penal Code § 288(a), and was sentenced to six years of incarceration. NTA. Petitioner served four and a half years and was scheduled to be released from prison on December 23, 2019. Upshaw Decl. Ex. F ("Romero-Romero Decl.") ¶ 59. He was detained by ICE in December 2019 pursuant to 8 U.S.C. § 1226(c), which directs that the government "shall take into custody any alien who is deportable" based on a conviction of an aggravated felony. *See* Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). From December 23, 2019 until now Petitioner has been detained at Mesa Verde. Upshaw Decl. Ex. D. He is currently in removal proceedings.

After hearings before the San Francisco Immigration Court in January and February 2020, an immigration judge ("IJ") found Petitioner removable. Upshaw Decl. Ex. H ("Upshaw Aff.") ¶ 5. In March 2020, Petitioner filed a Form I-130 Petition with United States Citizenship and Immigration Services ("USCIS") to re-adjust status (re-apply for residency) through his adult son, anticipating that he was eligible for a waiver of inadmissibility pursuant to INA § 212(h). *Id.* ¶¶ 5-7. He also applied for relief under the Convention Against Torture ("CAT"). *Id.* ¶ 5. The I-130 was approved on May 15, 2020, *id.* ¶ 13, and Petitioner filed his applications for a waiver of inadmissibility (I-601) and adjustment of status (I-485) on June 30, 2020, *id.* ¶ 15. After a hearing on July 28, 2020, the IJ denied Petitioner's applications for deferral of removal under CAT, for waiver of inadmissibility under § 212(h) and for adjustment of status under INA § 245, and ordered him removed to El Salvador. *Id.* ¶ 18; Decl. of Deportation Officer Rigoberto Gilbert ("Gilbert Decl.") Ex. 7 ("IJ Order"). The IJ found that, pending removal, Petitioner was subject to mandatory detention under INA § 236(c), 8 U.S.C. § 1226(c), and that the Court lacked jurisdiction to consider his release on bond. Upshaw Aff. ¶ 19; IJ Order. The IJ's order became final on August 25, 2020 when the IJ considered Petitioner's motion to reconsider but denied relief. Upshaw Aff. ¶ 22. On August 27, Petitioner filed a notice of appeal with the Board of

Immigration Appeals ("BIA"). *Id.* ¶ 23. The appeal remains pending. *Id.* ¶ 28.

Petitioner has now been in custody over one year. Having appealed his case to the BIA, his removal order is not yet administratively final. 8 C.F.R. § 1241.1. He has yet to receive a bond hearing. He argues that his "prolonged detention without a hearing on danger and flight risk violates the Due Process Clause of the Fifth Amendment and the Eighth Amendment's Excessive Bail Clause." Petition at 1. He asks the Court to issue a writ of habeas corpus and order his immediate release or, in the alternative, order his release within 14 days unless Respondents schedule a bond hearing.

### III.   JURISDICTION AND VENUE

The Court has jurisdiction under 28 U.S.C. §§ 1331, 2241 to consider constitutional challenges to Petitioner's continued detention under 8 U.S.C. § 1226(c). *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("[I]t is clear that we have jurisdiction over petitioners' [prolonged detention] claims, as does the district court."). As to venue, Petitioner is being held pursuant to 8 U.S.C. § 1226(c) in Mesa Verde, which lies outside this District. But venue is nonetheless proper here under 28 U.S.C. § 1391 because at least one Respondent (the Acting Director of the San Francisco Field Office) is located in this District, and because Petitioner alleges that he was before the Immigration Court in this District and that a substantial part of the events giving rise to his claims took place in this District: he was arrested and placed in detention by the San Francisco ICE Field Office, his removal proceedings and venue took place in San Francisco Immigration Court and a San Francisco IJ found he was subject to mandatory detention. *See Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *2 (N.D. Cal. Jan. 8, 2020), *appeal dismissed*, 2020 WL 6606369 (9th Cir. Aug. 25, 2020) (venue proper in this District because petitioner alleged that the Acting Field Director was in San Francisco, most of the material events occurred here, and because the "relief ordered by the Court will be directed to the San Francisco ICE office").

### IV.   LEGAL FRAMEWORK

A federal court may grant a writ of habeas corpus to an individual if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A court "entertaining an application for a writ of habeas corpus shall forthwith award the writ or

3

issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.*

Section 237(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a), directs that, "[a]ny alien . . . in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more" of certain "classes of deportable aliens." 8 U.S.C. § 1227(a). Included is "[a]ny alien who is convicted of an aggravated felony at any time after admission." *Id.* § 1227(a)(2)(A)(iii). The parties do not dispute that Petitioner's state-court conviction in 2016 was an aggravated felony.

INA § 236, 8 U.S.C. § 1226, "generally governs the process of arresting and detaining that group of aliens [subject to removal pursuant to § 1227(a)] pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). Under § 1226(c)(1)(C), the Attorney General is required to "take into custody any alien who . . . is deportable by reason of having committed any offense covered in [§ 1227(a)(2)(A)(iii)]. . . when the alien is released [from custody], without regard to whether the alien is released on parole, supervised release, or probation . . . ." The Attorney General "may release" such an individual "only if" "the release . . . is necessary" for witness-protection purposes and if the individual "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2). In other words, "§1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Jennings*, 138 S. Ct. at 847. The subsection "expressly prohibits release from that detention except for narrow, witness-protection purposes," and it "does not on its face limit the length of the detention it authorizes." *Id.* at 846. The Supreme Court in *Jennings* rejected the argument that anything in the text of § 1226(c) prohibits prolonged detention "in the absence of an individualized bond hearing at which the Government provides by clear and convincing evidence" that detention remains justified. *Id.* at 839; *id.* at 837 ("Section 1226(c) [] carves out a statutory category of aliens who may *not* be released under §1226(a)."). The Court

4

found the Ninth Circuit erroneously concluded that periodic bond hearings were required by the language of the provision. However, it left open the question of whether prolonged detention of an alien without individualized review by a neutral decisionmaker violates due process. Neither it nor the Ninth Circuit has answered that question. *See Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (remanding the constitutional issue to the district court after remand by the Supreme Court). But both have indicated that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Marin*, 909 F.3d at 256 ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so."). Taking its cue from Supreme Court and Court of Appeals, the Court concludes here that Petitioner's prolonged detention raises due process concerns.

## V. PETITIONER'S ENTITLEMENT TO RELIEF

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690; *see also id.* at 718 (Kennedy, J., dissenting) ("Liberty under the Due Process Clause includes protection against unlawful or arbitrary personal restraint or detention."). "'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore v. Kim,* 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). "A well-established line of cases in our circuit has applied this due process guarantee to prolonged immigration detentions without a custody hearing." *Masood*, 2020 WL 95633, at *3.

In *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), for example, a lawful permanent resident who had been detained for nearly seven years under § 1226(c) and then § 1226(a) sought habeas relief while his petition for review of his removal order was pending before the Ninth Circuit. *Id.* at 944-48. Discussing *Demore*, the Court of Appeals wrote that although Supreme Court upheld § 1226(c)'s mandatory detention provision, "it did so

with the specific understanding that § 1226(c) authorize[s] mandatory detention only for the 'limited period of the non-citizen's removal proceedings,' which the Court estimated 'lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal' his removal order to the BIA." *Id.* at 950 (quoting *Demore,* 538 U.S. at 530). The Court of Appeals noted that "[r]eferences to the brevity of mandatory detention under § 1226(c) run through *Demore*." 535 F.3d at 950 (citing *Demore*, 538 U.S. at 513, 523, 526, 529 n. 12). Although it ultimately decided as a matter of statutory interpretation that § 1226(a) requires the Attorney General to provide aliens with a bond hearing, the court nonetheless stated that "prolonged detention without adequate procedural protections" such as "receiving an individualized determination of the necessity of detention before a neutral decision maker" "would raise serious constitutional concerns." 535 F.3d at 950.

As another example, in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) ("*Diouf II*"), the Ninth Circuit addressed prolonged detention under § 1231(a)(6) (for aliens already ordered removed). The court extended *Casas-Castrillon* to aliens detained under § 1231(a)(6), again noting that "prolonged detention . . . without adequate procedural protections"—i.e., a bond hearing—"would raise 'serious constitutional concerns.'" *Id.* at 1086 (quoting *Casas-Castrillon*, 535 F.3d at 950). The court opined that, "[w]hen detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Id.* at 1091-92. The government's burden in having to provide a hearing before an immigration judge, the court concluded, was "a reasonable one." *Id.* at 1092. "While *Diouf II* specifically addressed Section 1231(a)(6), its reasoning was based on constitutional considerations of due process, and there is no reason to treat continued detention" under § 1226(c) any differently. *Masood*, 2020 WL 95633, at *3.

Both *Casas-Castrillon* and *Diouf II* "invoked the doctrine of constitutional avoidance to imply a statutory right to a bond hearing – a statutory right that does not survive the Supreme Court's holding in *Jennings* – but their reasoning was constitutional in nature." *Rodriguez v.*

*Nielsen*, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019). Thus, on the issue of due process, they hold as much force after *Jennings* as they did before.

In this case, the due process concerns raised by Petitioner's detainment warrant relief. Petitioner has been detained for over a year[1], and there is no remotely certain end in sight as to his custody. The government doesn't even suggest when Petitioner's BIA appeal will be resolved, and Petitioner indicates that he is likely to petition the Ninth Circuit for a review of the BIA's decision. Upshaw Aff. ¶ 31. Either process alone could lead to Petitioner's appeal taking many more months, and together almost certainly would take well over another year. The government reminds the Court that Petitioner's "litigation choices have affected the length of his detention," that he "chose to seek reconsideration with the IJ, and then chose to appeal to the BIA." Return at 12. It submits that "[t]he length of Petitioner's detention is thus a result of his choices and strategies, including seeking continuances, relief from removal, and appellate review." *Id.* But "[t]his does not redound to [Petitioner's] discredit, as the government would have it." *Masood*, 2020 WL 95633, at *3. Petitioner's BIA appeal (and his appeal to the Ninth Circuit, should he pursue it) is perfectly legitimate; if his removal becomes final, he loses the right to live in the country he's lived in since he was an infant (he's over 40 now), "and it ill suits the United States to suggest that he could shorten his detention by giving up these rights and abandoning his [appeal]." *Id.* Nor does the Court find compatible with our system of government that Petitioner should simply have to forfeit his due process rights because he is choosing (if one can really call it a choice) to pursue the rights provided to him by our laws.[2]

Nor is the Court persuaded by the Respondents' argument as to the government's interest. According to Respondents, the government "maintains a strong interest in upholding Section

---

[1] This is over twice the length of time the Supreme Court cited as an outer limit "in the minority of cases" in which an alien chooses to appeal the decision of an IJ to the BIA. *Demore*, 538 U.S. at 530 (upholding only "brief" detentions under Section 1226(c), which last "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal").

[2] According to Respondents, they "do not suggest that Petitioner . . . should be penalized for" for availing himself of his rights to appeal his removal. Return at 12. That assertion does not couple well with their suggestion that Petitioner's prolonged detention without opportunity for a custody hearing is "a result of his choices and strategies."

7

1226(c)'s statutory framework of mandatory detention for criminal aliens convicted of aggregated felonies." Return at 13. "Section 1226(c)," they claim, "embodies Congress's categorical judgment that non-citizens who have committed the specified offenses pose an undue flight risk and danger to the community—and that immigration judges should no longer be in the business of trying to predict whether they will be a flight risk or danger." *Id.*; *id.* ("Congress has determined that the risk of erroneous release among these criminal aliens is too high to permit the exercise of discretion through a bond hearing."). Be that as it may, all "persons" in the United States—citizen or otherwise—are entitled to due process rights, and not just certain categories. *Zadvydas*, 533 U.S. at 693 ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). If immigration judges should not be in the business of providing due process to individuals detained pursuant to § 1226(c), who should? Respondents' position here, taken to its extreme, would mean that the government could detain certain categories of immigrants indefinitely with no recourse for those individuals to challenge their detention. Even if that is what Congress intended—to indefinitely detain certain categories of immigrants with *no* opportunity to challenge custody—our system of government has never allowed Congress to legislate away Constitutional rights. It may be that Congress made a judgment that immigrants who've committed certain types of specified offenses pose an undue flight risk or danger to the community, but there must be some process for that assumption to be challenged on an individual basis, for "both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious." *Zadvydas*, 533 U.S. at 721 (Kennedy, J., dissenting). The Supreme Court has said that, even where "protecting the community" is a justification, "we have upheld preventive detention based on dangerousness *only when* limited to specially dangerous individuals and *subject to strong procedural protections*." *Zadvydas*, 533 U.S. at 690-91 (emphasis added). Respondents would have no procedural protections at all. "Moreover, . . . [p]roviding a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community." *Jimenez v. Wolf*, 2020 WL 510347, at *4

(N.D. Cal. Jan. 30, 2020).

Nor, finally, are the due process concerns fully alleviated by the fact that Petitioner sought and was denied emergency release in the class action pending before Judge Chhabria. *See Zepeda Rivas, et al., v. Jennings, et al.*, No. 20-cv-2731-VC, 2020 WL 2059848. In an effort to ameliorate conditions at Mesa Verde in response to the COVID-19 pandemic, Judge Chhabria instituted a bail process whereby ICE detainees at the facility submitted bail applications for release on bail while that case is pending. Petitioner filed a bail application pursuant to Judge Chhabria's order and a renewed application, and was twice denied bail. But that process, as far the Court can tell, did not involve an opportunity for individual detainees to testify at a hearing and/or present evidence. This is different from a hearing in an immigration court, where an individual is provided the chance to testify and present evidence, and where there is an established process for appellate review. Upshaw Decl. Ex. L (Decl. of Emilou MacLean, counsel in *Zepeda Rivas*) ¶ 5. A custody or bond hearing is what's demanded of Respondents, and the Court is reluctant to find that demand satisfied by a less robust, emergency procedure carried out by this court.

Petitioner's prolonged and ongoing detention without a custody hearing is not compatible with due process. He is entitled to relief.[3] "The remedy for the due process concerns here is an individualized custody hearing." *Masood*, 2020 WL 95633, at *4 (ordering a custody hearing within 28 days of the court's order) (citing *Diouf II*, 634 F.3d at 1092; *Casas-Castrillon*, 535 F.3d at 951; *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)); *Jimenez*, 2020 WL 510347, at *4 (ordering a bond hearing within 30 days for an individual detained in removal proceedings pursuant to § 1226(c)); *Rodriguez*, 2019 WL 7491555, at *7 (petitioner in similar circumstances "entitled to an individualized determination by an immigration judge whether he is a danger to the community or a flight risk"). At the custody hearing, the government will bear the burden of showing by clear and convincing evidence that Petitioner's continued detention is justified. *See Singh v. Holder*, 638 F.3d 1196, 1203-06 (9th Cir. 2011) (the "clear and convincing evidence"

---

[3] The Court well appreciates the severity of the crime for which Petitioner was convicted and for which he served time. But Petitioner has served his sentence for that crime. To now hold him in indefinite detention with no due process rights is, in a sense, a second sentence for the same crime, this one more severe, as Petitioner no doubt was given due process in his criminal case.

9

standard of proof applies to the showing the government must make at custody hearings for aliens facing prolonged detention); *Masood*, 2020 WL 95633, at *5 (ordering a custody hearing and holding that "the government will bear the burden to show that petitioner's continued detention is justified by clear and convincing evidence"); *Jimenez*, 2020 WL 510347, at *4 ("At the hearing, [the government] must justify [the petitioner's] continued detention by clear and convincing evidence.").

## VI.   CONCLUSION

The Petition is **GRANTED**.  The government is directed to release Petitioner from custody unless within 28 days of this Order he is granted a custody hearing before an immigration judge, at which the government shall justify by clear and convincing evidence Petitioner's continued detention.  If the immigration judge's decision is not given within 14 days of the custody hearing, Petitioner must be released from detention.  The parties are **ORDERED** to file a joint status report by April 1, 2021, regarding Petitioner's detention or release.

Petition's Motion for Decision on the Briefs without Oral Argument is **GRANTED**.

**IT IS SO ORDERED.**

Dated: January 26, 2021

THOMAS S. HIXSON
United States Magistrate Judge